In the Matter of the ESTATE OF Elmer
A. HERRING, Deceased.

No. 59881.

Supreme Court of Iowa.

May 17, 1978.

Rehearing Denied July 20, 1978.

Daniel W. Boyle of Schulman, Phelan, Tucker, Boyle & Mullen, Iowa City, for appellant (applicant-appellee), Elsie Swanson, Executor of the Estate of Fred Swanson, deceased.

Robert W. Jansen of Trott, Jansen & Bramhall, Iowa City, for appellee (resister-appellant), John L. Mumm, American Legion Post of Lone Tree, Iowa.

Considered by MOORE, C. J., and Le-GRAND, REES, HARRIS and McCOR-MICK, JJ.

MOORE, Chief Justice.

Residuary legatee appeals from trial court construction of will order which held landlord-testator's devise of fee to tenant merged leasehold into freehold and consequently landlord-testator's one-half share of unharvested unmatured crops passed in its entirety as real estate to the tenant-devisee. On appeal, the Court of Appeals reversed the trial court. We granted further review.

The facts are not disputed. Elmer A. Herring died unmarried, without issue and testate on September 16, 1974. In his will he devised a 332.4 acre farm to his tenant, Fred Swanson. He made identical devises of farms to two other long time tenants who have agreed to be bound by the ruling in this case. The residue of his estate was left in trust, the sole beneficiary being the John L. Mumm, American Legion Post of Lone Tree, Iowa. Fred Swanson died September 3, 1975 and the successor to his interest is the Swanson estate.

Swanson had rented the farm in question from Herring for almost 41 years. For at

least the last 22 years the lease was oral and on a crop share basis. Each received one-half of the crop following harvest. Pursuant to practice, Herring's share was paid to him by delivery to a grain elevator for sale.

Both corn and soybeans were still growing and unmatured on September 16, 1974, the date of Herring's demise. Subsequently the crops were harvested from late October through December. Swanson retained one-half of the crop and delivered the other half to an elevator for sale. Swanson had been directed to do so by an attorney for the Herring estate.

On May 12, 1976 the executor of Herring's estate filed an application for construction of the will purporting to distribute the crop moneys to the residuary legatee. Elsie Swanson, as executor of the Fred Swanson estate, filed a resistance to the application, claiming a right to the crop money under the doctrine of merger. The matter proceeded to hearing before the Honorable Ansel D. Chapman.

On the basis of the foregoing facts the trial court framed the issue raised as follows: "Who is entitled to the 'Elmer A. Herring' one-half share of the unharvested crop growing on the Swanson farm at the date of Herring's death—Fred Swanson and through him his estate or the Elmer A. Herring Estate?"

On September 7, 1976 the trial court determined Swanson's executor was entitled to the disputed share. It held the landlord's share of an unmatured crop passed as realty to Swanson as devisee and that rent not yet accrued at the date of Herring's death passed as an incident of ownership to Swanson. Furthermore, the court held the merger of the leasehold into the freehold extinguished the lease and thus sections 633.351–352 of the probate code granting the personal representative possessory rights to rental real estate were inapplicable. The residuary legatee appealed from that holding and order.

The Court of Appeals on December 28, 1977 reversed the trial court holding the doctrine of merger should not apply because to do so would be prejudicial to the executor of the Herring estate and the residual legatee of the estate and result in a distribution of property contrary to the statutory scheme provided in sections 633.350 through 633.352.

In view of the importance of the issue raised in the probating of rural Iowa estates, we granted the Swanson estate's application for further review. We now reverse the decision of the Court of Appeals and reinstate the trial court judgment.

I. This proceeding to construe a will was properly tried as an equity proceeding and review by this court is de novo. Code section 633.33; *Matter of Estate of Kruse*, Iowa, 250 N.W.2d 432, 433. We give weight to the fact findings made below but are not bound by them. Rule 14(f)7, Rules of Appellate Procedure. However, the questions here presented primarily involve those of applicable law.

II. It is undisputed that at the time of Herring's death the crops were still unmatured. It is a well-established rule that unmatured crops are chattels real, and in the absence of a stipulation to the contrary, pass as real estate to a devisee under a will. *In Re Estate of Luke*, Iowa, 184 N.W.2d 42, 47; *In Re Estate of Rahfeldt*, 253 Iowa 432, 435–436, 112 N.W.2d 858, 861. In *In Re Estate of Dalton*, 183 Iowa 1013, 1018, 168 N.W. 332, 334, this court stated:

" * * *. The general rule is that rents accruing after the owner's death belong to the heirs or devisees, as an incident to the ownership of the land which descends to them. * * *. Had the rental been a share of the crop, payable at maturity, then, of course, the rent would accrue at that time. Rents to accrue are chattels real, and, as said, pass upon the death of the owner to those who succeed to such ownership, * * *."

III. It is also a well-recognized rule that a leasehold merges and is extinguished in a freehold when the tenancy and fee vest in the same person at the same time. 49 Am.Jur.2d, Landlord and Tenant, section 994, page 964; *Schick v. Davenport Realty*

*Co.*, 200 Iowa 997, 999, 205 N.W. 782, 783; *Sherlock v. Thompson*, 167 Iowa 1, 13, 148 N.W. 1035, 1039.

At common law the law courts applied the doctrine of merger as an inflexible rule. Today merger is not favored in equity and modern day courts may interpose equitable aid to protect the parties from the harshness of the common-law rule. 49 Am. Jur.2d, Landlord and Tenant, section 994, page 965; *Sherlock v. Thompson*, supra, 167 Iowa at page 13, 148 N.W. at page 1039.

In *Sherlock v. Thompson*, supra, upon which the residuary legatee strongly relies, we held against claimed merger where it would have destroyed a complex scheme of distribution benefiting other members of decedent's family. It is readily factually distinguishable from the case at bar.

■ IV. The question of whether there is a merger of estates is largely a matter of intention of the parties. *Schick v. Davenport Realty Co.*, supra, 200 Iowa at page 1000, 205 N.W. at page 783. The burden of proof rests upon a party who claims there was no merger, to prove a contrary intention or that it would be inequitable to the rights of a third party—here the residuary legatee, John L. Mumm Legion Post.

The intention with regard to merger will be determined as of the time the two estates meet and based on all the circumstances surrounding acquisition of the different interests and the situations and incidents of the property involved. 28 Am. Jur.2d, Estates, section 374, page 583.

There is no evidence of any express intent of Herring regarding the crops. The facts and circumstances do not indicate he intended the residuary beneficiary receive one-half the 1974 crop rather than it all go to Swanson. Under the provisions of Herring's will Swanson was given the entire farm, including all improvements and buildings thereon, with the requirement he pay the executor an amount equivalent to the taxes of every nature and kind for which his estate would be liable on account of the bequest to Swanson.

■ We find there was a merger of the fee with the leasehold at the time of Herring's death. By that union the leasehold was extinguished as a person cannot be both landlord and tenant of the same property. 49 Am.Jur.2d, Landlord and Tenant, section 994, page 964.

V. Residuary legatee's reliance on the language of Code section 633.351, which requires the personal representative to take possession of real estate if there is a lease outstanding, is misplaced. The lease was extinguished by the merger and was not outstanding.

Additionally, it must be noted the Herring executor had no reason or necessity to take possession of the real property for purpose of sale or administration.

We hold the order and judgment of the trial court must be affirmed.

THE HOLDING OF THE COURT OF APPEALS IS REVERSED AND DISTRICT COURT ORDER AND JUDGMENT REINSTATED.