In the Matter of the ESTATE OF Hugo MICHEEL, Deceased.

Helena PETERSEN, Florence Beisch, Anna Marie Liechti, William Hoogestraat, Roxann Winterfield, David Hoogestraat, Calvin Hoogestraat, Steve Hoogestraat, Linda Irlbeck, Tom Hoogestraat, Kay Campbell, Jill Johnston and Marcella Vetter, Appellants,

v.

Shirley ATTEMA and Marlene Sorenson, Co–Executors of the Estate of Hugo Micheel, Deceased, Appellees.

No. 96–1715.

Supreme Court of Iowa.

April 22, 1998.

Stacey N. Warren of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney, Shindler & Scalise, P.C., Des Moines, and Robert W. Peters of Robert W. Peters, P.C., Carroll, for appellants.

Bruce E. Becker of Vest, Becker & Murray Law Firm, and James K. Graven, Sac City, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN, and TERNUS, JJ.

HARRIS, Justice.

This probate proceeding calls for application of the antilapse statute which was amended after execution of a will, but before the testator's death. Even though, at the time of the amendment, the testator was incapacitated, and under guardianship and conservatorship, the trial court applied the amended antilapse statute. We affirm.

Hugo Micheel executed his will on August 27, 1957. At that time he was living with Evelyn Holck, whom he appointed as executor of his estate. Although they never married, Hugo and Evelyn lived together from 1944 until 1992 when Hugo entered a nursing home.

Item one of Hugo's will directed payment of his burial and administrative expenses, along with any other debts. Item two, the provision involved in this appeal, provided:

It is my will and I so provide that my executrix hereinafter appointed convert all of my estate into cash within a two-year period of time after my death, all without order of court, appraisement, or bond for the sale of real estate; and I further give her the right to execute deeds of conveyance in making sales of real estate.

I give, devise and bequeath one-half (½) of the net proceeds therefrom to Evelyn Holck, one-fourth (1/4) to Hilda Passick, and one-fourth (1/4) to Edna Mauer, each to have and to hold the same as and for her own.

I nominate and appoint Evelyn Holck executrix of this, my Last Will and Testament and hereby exonerate her from giving bond as such.

Edna Mauer was Hugo's sister who predeceased him, survived by her only child, Lawrence Mauer. Hilda Passick is also Hugo's sister and survived him. At the time Hugo executed his will, the antilapse statute was codified in Iowa Code section 633.16 (1954)

and stated: "If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

When Hugo entered the nursing home in 1992, Evelyn was appointed guardian and conservator because of his debilitation resulting from Alzheimer's disease. Evelyn died January 7, 1994, leaving no issue. Hugo died on October 8, 1995. His estate was valued at more than $800,000.

In 1995, before Hugo's death, the 76th General Assembly amended the antilapse statute, now codified in Iowa Code section 633.273(1) (1997), as follows:

> 1. If a devisee dies before the testator, leaving issue who survive the testator, the devisee's issue who survive the testator shall inherit the property devised to the devisee per stirpes, unless from the terms of the will, the intent is clear and explicit to the contrary.

The obvious effect of the amendment was to substitute the devisee's issue for the devisee's heirs as those who would enjoy the devise in the event the devisee predeceased the testator.

In July 1996 the co-executors for Hugo's estate filed an application to interpret the will regarding the distribution of Evelyn's share. Objections were filed by thirteen of Evelyn's relatives urging, under the antilapse statute, that they should inherit the property devised to Evelyn. The district court determined that the amended statute applied. Because Evelyn had no issue, the court ruled the devise to her lapsed, and thus her share was to be distributed equally to Hilda Passick and Lawrence Mauer.

I. The matter was correctly tried in equity. *See In re Estate of Herring*, 265 N.W.2d 740, 741 (Iowa 1978). Because the dispute involves interpretation of a will, our review is de novo. Iowa R.App. P. 4; *Gustafson v. Fogleman*, 551 N.W.2d 312, 314 (Iowa 1996); *In re Estate of Thompson*, 511 N.W.2d 374, 377 (Iowa 1994).

II. The objectors first contend the trial court erred in failing to find the existence of a common-law marriage between Hugo and Evelyn, a question the court con-

sidered irrelevant because Evelyn predeceased Hugo without issue. We note in passing that the objectors did not come close to establishing a common-law marriage. Hugo mentioned Evelyn only by name in his will. It seems only plausible that, if he claimed her as such, Hugo would have identified Evelyn as his wife. Evelyn was mentioned in Hugo's obituary but not as a surviving wife, only as a "long-time friend." There was simply no showing of a common-law marriage.

Even so the district court was on solid ground in ignoring the claim of a common-law marriage. The objectors sought to establish it in order to argue that the will's mention of Evelyn as a spouse was an indication of an intent contrary to the antilapse statute. The trial court correctly saw that this argument is negated by statute. Iowa Code section 633.274 provides:

> The devise to a spouse of the testator, where the spouse does not survive the testator, shall lapse notwithstanding the provisions of section 633.273, unless from the terms of the will, the intent is clear and explicit to the contrary.

Even if Hugo and Evelyn had been married, the bequest to her would nevertheless have lapsed.

III. A bequest lapsed at common law when it was made to someone who predeceased the testator. Because the application of this rule resulted in hardship, antilapse statutes evolved to temper it. Thus we have said the Iowa antilapse statute "was enacted to preserve the devise for those who would presumably have enjoyed its benefits had the deceased devisee survived the testator and died immediately thereafter." *In re Estate of Braun*, 256 Iowa 55, 58, 126 N.W.2d 318, 320 (1964). To effect its purpose, we give the statute a broad and liberal construction. *Id.* at 58–59, 126 N.W.2d at 320. We presume the testator knew of the antilapse statute. *Tuecke v. Tuecke*, 257 Iowa 199, 205, 131 N.W.2d 794, 798 (1964). We also assume the testator knew the antilapse statute's effect on the bequests provided in the will. *Braun*, 256 Iowa at 59, 126 N.W.2d at 320. An intent contrary to the antilapse statute must

be manifest from terms of the will if the statute is not to be applied.[1] *In re Estate of McCarthy,* 256 Iowa 66, 73, 126 N.W.2d 357, 361 (1964).

 A will is ambulatory in the sense that it speaks from and takes effect on the date of testator's death. *Duhme v. Duhme,* 260 N.W.2d 415, 420 (Iowa 1977); *Newbury v. McCammant,* 182 N.W.2d 147, 150 (Iowa 1970). Cases are legion applying the rule that, when laws are changed after a will is executed but before it is probated, the parties' rights are determined in accordance with the law in existence at the testator's death, not those in force at the execution of the will.[2] *In re Estate of Duhme,* 267 N.W.2d 688, 691 (Iowa 1978); *Ross v. Alleghany Theological Seminary,* 204 Iowa 648, 651–52, 215 N.W. 710, 711–12 (1927); *see In re Estate of Christian,* 65 Haw. 394, 652 P.2d 1137, 1140 (1982); *Lester v. Lester,* 160 Ind. App. 671, 313 N.E.2d 357, 358 (1974); *In re Estate of Thompson,* 213 Kan. 704, 518 P.2d 393, 396–97 (1974); *In re Estate of Eversole,* 885 P.2d 657, 663–64 (Okla.1994); *Douglas v. Newell,* 719 P.2d 971, 978 (Wyo.1986). Accordingly the amendment to Iowa Code section 633.273(1), which became effective July 1, 1995, controls the present case.

IV. The parties do not dispute the law we outlined in the preceding division. The controverted issue in the appeal, discussed in this division, is whether the expressed exemption to Code section 633.273(1), "from the terms of the will, the intent is clear and explicit to the contrary," should apply.

The argument proceeds from the legal assumption that Hugo was aware of the antilapse statute and its consequences when he signed his will. The consequences at the time would call for Evelyn and her heirs to inherit one-half of his estate. In the light of his debilitation from Alzheimer's disease, objectors argue, it was impossible for him to change his will in order to demonstrate he did not want the amended antilapse statute to apply.

The main flaw in the objectors' argument is that the contrary intent they urge is extraneous to the will. The "contrary intent" exception on which they rely cannot be supplied by independent evidence; the statute is clear that it must arise from the terms of the will itself. *McCarthy,* 256 Iowa at 73, 126 N.W.2d at 361. Information about amending the statute and about Hugo's Alzheimer's disease is suggested from other sources. Hugo's will could easily have been worded so as to provide the contrary intent now urged. It easily could have recited that Evelyn's "heirs" would receive her share should she predecease Hugo. Of course the will did not provide this, and such a plan cannot now be created under the guise of the antilapse statute. The district court was correct in so holding.

**AFFIRMED.**

---

1. The words "clear and explicit" were substituted for the word "manifest" in the antilapse statute. *See* 1963 Iowa Acts ch. 326, § 273 (codified at Iowa Code § 633.273 (1966)). The change certainly does not lessen the burden on those seeking to avoid application of the antilapse statute.

2. This conclusion does not make the statute's application impermissibly retrospective because it affects no vested rights. This is so because heirs of a decedent do not acquire a vested interest in the estate until the decedent's death. *See In re Estate of Parsons,* 272 N.W.2d 16, 18–19 (Iowa 1978); *Duhme,* 260 N.W.2d at 418.