IN THE SUPREME COURT OF IOWA

 No. 131 / 04-0564

 Filed March 10, 2006

FJORDS NORTH, INC.,

 Appellant,

vs.

RANDY HAHN, SUSAN HAHN
and H & H HOMEBUILDERS,

 Appellees.

________________________________________________________________________
 Appeal from the Iowa District Court for Johnson County, Larry J.
Conmey, Judge.

 Appeal from district court judgment ruling that claim to extend
restrictive covenants under Iowa Code section 614.24 was invalid due to
claimant’s failure to specify time and manner in which he acquired his
interest. REVERSED AND REMANDED.

 Daniel DenBeste and Robert M. Hogg of Elderkin & Pirnie, P.L.C.,
Cedar Rapids, for appellant.

 Michael J. Pitton of Martinek & Pitton, Iowa City, for appellees.

CADY, Justice.
 This case stems from a dispute between a real estate developer and an
owner of a lot in its development over the construction of a house claimed
to be in violation of restrictive covenants recorded by the developer in
1980. The developer brought an action to enjoin the homeowner’s
construction. The homeowner moved for summary judgment, claiming the
applicable limitation period to bring the action had expired. The district
court agreed and granted summary judgment in the homeowner’s favor. The
developer appeals.
 I. Background Facts and Proceedings
 Fjords North, Inc. is the developer of a subdivision near North
Liberty, Iowa named Fjords North Addition. H&H Home Builders, Inc., a
corporation partially owned by Randy and Susan Hahn, is the owner of lot 52
in the Fjords North Addition.
 Fjords North filed a set of restrictive covenants for the development
on March 26, 1980 with the Johnson County recorder. One of the covenants
provided:

 No building shall be erected on any lot unless the design and
 location is in harmony with existing structures and locations. Plans
 and specifications of proposed houses and their locations on the site
 shall be submitted to Fjords North, Inc., the developer, for its
 written approval before commencement of construction. This
 restriction is to apply to all future home owners in this area. In
 any case no dwelling shall be permitted on any lot described herein
 having total living area of less than 2,000 square feet.

The covenants further stated:

 [T]hese covenants are to run with the land and shall be binding upon
 all of the parties and all persons claiming under them for ten (10)
 years, at which time said covenants shall automatically be extended
 for successive periods of ten (10) years unless by vote of the
 majority of the owners of the lots it is agreed to change said
 covenants in whole or in part.
The first lot in the development was sold by deed recorded on April 2,
1980, and the developer has been selling other lots since that time.
 On March 22, 2001, Mark Pattison, an officer of the Fjords North
Homeowners’ Association, filed a document with the Johnson County recorder
entitled “Claim to Extend Use Restrictions Pursuant to § 614.24 of the Iowa
Code.” The claim indicated it was filed for the purpose of extending the
time to bring an action to enforce the use restrictions for the development
an additional twenty-one years. See Iowa Code § 614.24 (2001) (“No action
based on any claim arising or existing by reason of the provisions of any .
. . contract . . . reserving or providing for . . . use restrictions in and
to the land therein described shall be maintained either at law or in
equity . . . after twenty-one years from the recording of such . . .
contract . . . unless the claimant shall . . . file a verified claim with
the recorder of the county wherein said real estate is located within said
twenty-one year period.”). It further stated that Pattison held a present
fee simple interest in lot 51 of the development, platted and recorded in
book 19, page 67 of the Johnson County plat records, and that the use
restrictions were set forth in restrictive covenants dated January 31, 1980
and recorded March 26, 1980 in book 570, page 14.
 On December 29, 2002, Randy Hahn submitted plans for a house he
planned to build on lot 52 to the Homeowners’ Association for approval.
After Hahn failed to receive a prompt response to the plans from the
Homeowners’ Association, he began construction on January 7, 2003 by
digging and pouring the foundation for the house. The association then
objected to Hahn’s plans and opined that the proposed home was not in
harmony with the existing homes in the development, in violation of the
restrictive covenants. The Association, through its attorney, demanded
that Hahn cease construction. Hahn continued to build the house.
 On January 21, 2003, Fjords North filed a petition in district court
seeking damages and temporary and permanent injunctive relief. The Hahns
answered the petition. They asserted they complied with the covenants,
Fjords North unreasonably failed to timely approve their plans, and the
covenants had expired. The court held a hearing on Fjords North’s
application for a temporary injunction on March 19. On March 20, the court
denied the application on three grounds. The court found no evidence that
Fjords North would be irreparably harmed if construction continued, no
evidence that other remedies were inadequate, and no likelihood that Fjords
North would succeed on the merits.
 The Hahns then moved for summary judgment. They asserted the
verified claim filed by Pattison failed to comply with the statutory
requirement that a claim to extend the time to file an action set forth the
“time and manner” in which the claimant’s interest was acquired. They
pointed out the claim only identified the date the subdivision’s original
restrictive covenants were recorded, without further describing the time
and manner that Pattison’s interest in the restrictive covenants was
acquired.
 Fjords North resisted the summary judgment motion on three
alternative grounds. First, it argued that the “time and manner”
requirement did not apply to claims filed after July 4, 1966. Second, it
asserted the claim substantially complied with the “time and manner”
requirement. Third, it argued that the notice should be reformed to cure
any defects. The district court granted summary judgment, and Fjords North
appealed.
II. Standard of Review
 The standard of review for rulings granting summary judgment is well
known:

 “We review a ruling on a motion for summary judgment for
 correction of errors at law. ‘A motion for summary judgment should
 only be granted if, viewing the evidence in the light most favorable
 to the nonmoving party, ‘the pleadings, depositions, answers to
 interrogatories, and admissions on file, together with the affidavits,
 if any, show that there is no genuine issue as to any material fact
 and that the moving party is entitled to a judgment as a matter of
 law.’”

Otterberg v. Farm Bureau Mut. Ins. Co., 696 N.W.2d 24, 27 (Iowa 2005)
(citations omitted).
 III. Discussion
 Iowa Code section 614.24, also known as the Stale Uses and Reversions
Act (SURA), provides, in relevant part:

 No action based on any claim arising or existing by reason of
 the provisions of any deed or conveyance or contract or will reserving
 or providing for any reversion, reverted interests or use restrictions
 in and to the land therein described shall be maintained either at law
 or in equity in any court . . . after twenty-one years from the
 recording of such deed of conveyance or contract or after twenty-one
 years from the admission of said will to probate unless the claimant
 shall, personally, or by the claimant’s attorney or agent, . . . file
 a verified claim with the recorder of the county wherein said real
 estate is located within said twenty-one year period. In the event
 said deed was recorded or the will was admitted to probate more than
 twenty years prior to July 4, 1965, then said claim may be filed on or
 before one year after July 4, 1965. Such claims shall set forth the
 nature thereof, also the time and manner in which such interest was
 acquired.[1]
Iowa Code § 614.24. If a claim is properly filed, it extends or preserves
the time to bring an action on the claim for an additional twenty-one
years. See id. § 614.25 (“The filing of such claim shall extend for a
further period of twenty-one years the time within which such action may be
brought by any person entitled thereto, and successive claims for further
like extensions may be filed.” (Emphasis added.)). We have said the
purpose of this statute was to simplify land transfers in Iowa by
shortening the title-search period for these types of claims. Compiano v.
Kuntz, 226 N.W.2d 245, 248 (Iowa 1975); Presbytery of Se. Iowa v. Harris,
226 N.W.2d 232, 235 (Iowa 1975). Yet, the statute allows interested
persons to keep stale reversionary and use restrictions alive if they
desire. See H.F. 115, 61st Gen. Assemb., Reg. Sess. (Iowa 1965). The
statute is to be applied liberally to further its purposes. Calamus Cmty.
Sch. Dist. v. Rusch, 299 N.W.2d 489, 490 (Iowa 1980).
 Restrictive covenants are contracts. Compiano, 226 N.W.2d at 249; 20
Am. Jur. 2d Covenants, Etc. § 149, at 668 (2005). Consequently, they are
covered by section 614.24. As one commentator explained,

 Covenants, especially neighborhood planning covenants,
 generating proprietary rights in equity frequently outlive their
 utility and if unlimited as to time, become mere clogs on title. Such
 interests are ordinarily beneficial either to the land affected or to
 adjacent lands, facilitating the highest and best use, when created,
 and may remain beneficial for more than a century. . . . Limitations
 on land use running in perpetuity may well become not only clogs on
 title, but clogs on alienation and utilization of land.

Arthur E. Ryman, Jr., The Iowa “Stale Uses and Reversions Statute”:
Parameters and Constitutional Limitations, 19 Drake L. Rev. 56, 60-61
(1969).
 We begin our analysis of the issues on appeal by examining the
statute. The complete statute is written in two paragraphs, but only the
first paragraph is relevant to this appeal.[2] The first sentence of this
paragraph sets forth the objective and scope of the statute. See Iowa Code
§ 614.24, para. 1 (“No action based upon any claim arising or existing by
reason of the provisions of any deed or conveyance or contract or will
reserving or providing for any reversion, reverted interests or use
restrictions in and to the land therein described shall be maintained
either at law or in equity in any court to recover real estate in this
state or to recover or establish any interest therein or claim thereto,
legal or equitable, against the holder of the record title to such real
estate in possession after twenty-one years from the recording of such deed
of conveyance or contract or after twenty-one years from the admission of
said will to probate unless the claimant shall, personally, or by the
claimant’s attorney or agent, or if the claimant is a minor or under legal
disability, by the claimant’s guardian, trustee, or either parent or next
friend, shall file a verified claim with the recorder of the county wherein
said real estate is located within said twenty-one year period.”). It
declares that actions based on claims arising from a reversion interest,
reverted interest, or use restriction contained in any deed, conveyance,
contract, or will may not be brought after twenty-one years from the
recording of the deed, conveyance, or contract, or the admission of the
will into probate, unless the claimant files a verified claim with the
county recorder within the twenty-one-year period. Id. Thus, the statute
applies to claims based on three types of provisions (reversion interests,
reverted interests, and use restrictions) contained in one of four types of
instruments (deed, conveyance, contract, or will). Id.
 The second sentence of the first paragraph contains a retroactivity
provision. See id. (“In the event said deed was recorded or will was
admitted to probate more than twenty years prior to July 4, 1965, then said
claim may be filed on or before one year after July 4, 1965.”). The
statute was enacted in 1965 and became effective July 1 of that year. 1965
Iowa Acts ch. 428, § 1; see Iowa Code § 3.7(1) (“All Acts and resolutions
of a public nature passed at regular sessions of the general assembly shall
take effect on the first day of July following their passage, unless some
other time is provided in an Act or resolution.”). Without a retroactivity
provision, existing claims beyond the limitation period would be precluded.
 However, the legislature specifically made the statute applicable to
claims to extend actions based on instruments recorded or admitted into
probate more than twenty years prior to July 4, 1965 and gave persons
claiming an interest based on these instruments a year and three days after
the effective date of the statute to file their claims with the county
recorder.
 The third sentence of the first paragraph describes the requirements
of a verified claim. See Iowa Code § 614.24, para. 1 (“Such claims shall
set forth the nature thereof, also the time and manner in which such
interest was acquired.”). It provides that the claims must set forth the
“nature thereof, also the time and manner in which such interest was
acquired.” Id.
 The last two sentences of the first paragraph set forth who may be a
claimant. See id. (“For the purposes of this section, the claimant shall
be any person or persons claiming any interest in and to said land or in
and to such reversion, reverter interest or use restriction, whether the
same is a present interest or an interest which would come into existence
if the happening or contingency provided in said deed or will were to
happen at once. Said claimant further shall include any member of a class
of persons entitled to or claiming such rights or interests.”). The
claimant must be a person who has a present interest or future interest in
the land or in the reversion, reverted interest, or use restriction, and
includes any member of a class claiming such an interest. Id.
 The primary argument by Fjords North is that the third
sentence—describing the requirements for what must be included in a
verified claim—only applies to claims described in the second sentence, the
retroactivity provision. Fjords North relies on the following language
contained in the second and third parts of the statute:

 In the event said deed was recorded . . . more than twenty years
 prior to July 4, 1965, then said claim may be filed on or before one
 year after July 4, 1965. Such claims shall set forth the nature
 thereof, also the time and manner in which such interest was acquired.

Id. Fjords North argues that the phrase “[s]uch claims” means the
requirements set forth in that sentence only apply to claims referred to in
the preceding sentence—i.e., claims based on deeds recorded before July 4,
1945. Fjords North relies on the last-antecedent rule to support this
argument. It postulates the legislature wanted to impose specific
requirements only to help identify ancient claims under the retroactivity
provision that may have been recorded prior to the modern recording system.
 Under the last-antecedent rule, “[r]eferential and qualifying words
and phrases, where no contrary intent appears, refer solely to the last
antecedent.” 2A Norman J. Singer, Statutes and Statutory Construction
§ 47:33, at 369 (6th ed. 2000) [hereinafter Singer]; accord Iowa
Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.,
606 N.W.2d 376, 380 (Iowa 2000) (“Under the doctrine of last preceding
antecedent, qualifying words and phrases refer only to the immediately
preceding antecedent, unless a contrary legislative intent appears.”
(citing State of Iowa ex rel. Dep’t of Transp. v. Gen. Elec. Credit Corp.,
448 N.W.2d 335, 345 (Iowa 1989))). Moreover, it has been held that use of
the word “such” normally shows the legislature intended to limit the clause
to the last antecedent subject. See People v. Clark, 13 Cal. Rptr. 2d 209,
212-13 (Ct. App. 1992) (“‘Such’ is used in statutes to make clear that the
second reference is to exactly the same concept mentioned previously.”
(citing People v. Jones, 758 P.2d 1165 (Cal. 1988))); Eagle Hill Corp. v.
Comm’n on Hosps. & Health Care, 477 A.2d 660, 665 (Conn. Ct. App. 1984)
(“The use of the word ‘such’ in grammatical usage refers to the last
antecedent.” (citing LaProvidenza v. State Employees’ Ret. Comm’n, 420 A.2d
905 (Conn. 1979))); In re De Lescaille’s Estate, 187 N.W.2d 741, 744 (Iowa
1971) (“The word ‘such’ ordinarily refers back to the last antecedent.”
(citing United States v. Legg, 157 F.2d 990, 992 (4th Cir. 1946); In re
Wallace’s Estate, 219 P.2d 910 (Cal. 1950))); McArtor v. State, 699 P.2d
288, 290 (Wyo. 1985) (“The accepted rule of construction is that ‘such’
refers to the character of that which immediately precedes it unless a
contrary legislative intent is evidenced.” (Citations omitted.)).
 However, the last-antecedent rule is not inflexible, and it does not
apply where the entire act reveals that the qualifying sentence applies to
several preceding subjects. Singer § 47:33, at 372. Ultimately, we look
to the intent of our legislature.
 When the statute in this case is read in context, it is obvious that
the nature-, time-, and manner-of-the-claim requirements apply to all
claims, not just those claims covered under the retroactivity provision.
The statute first declares that stale claims can be extended by filing a
verified claim within the twenty-one-year period, and then it declares that
claims otherwise extinguished because they predated the effective date of
the statute by more than twenty years can be extended through the
retroactivity provision. Iowa Code § 614.24. Thus, the statute addresses
the two circumstances when claims can be extended. After these two
circumstances are described, the statute then describes the necessary
contents of the verified claims to extend by referring to “[s]uch claims”
in the plural. Id. This approach, and the plural use of the word
“claims,” reveals that the claim requirements set forth in the third
sentence of the statute apply to the two circumstances just described, not
merely the most immediate circumstance. Thus, the language of the statute
supports the conclusion that all verified claims must meet the requirements
imposed by the third sentence of the statute. Furthermore, there is no
reason to believe the legislature had heightened concerns about ancient
deeds or the past recording system. It is obvious that the statute sought
to require some minimal content in verified claims so that all claims
sought to be extended could be properly identified.
 Fjords North next argues that the claim filed in this case adequately
complied with the statutory requirements for a claim. Ultimately, it
asserts that the statute only requires substantial compliance with the
statutory terms.
 Before we address the substantial-compliance argument, it is
necessary to step back and identify the information required to be
contained in a verified claim filed under the statute. The district court
and the parties viewed the statute to require the verified claim to
describe the nature of the underlying claim and the time and manner in
which the claimant’s interest was acquired.
 The relevant language of the statute at the heart of this case
provides: “Such claims shall set forth the nature thereof, also the time
and manner in which interest was acquired.” Id. (emphasis added). We have
already determined that the phrase “[s]uch claims” refers to all verified
claims to extend the time to file an action. The statute then proceeds to
identify the three essential components of a verified claim in terms of
nature, time, and manner. We will consider each component in turn.
 In describing the first requirement of a verified claim, the
legislature used the phrase “the nature thereof.” Having determined that
the immediately preceding phrase “[s]uch claims” refers to verified claims
to extend, the phrase “the nature thereof” that follows can only refer to
the nature of the claim sought to be preserved by the claimant. As
previously indicated, the first part of the statute makes it clear that it
only applies to actions based on claims arising from “provisions” in
various instruments that reserve or provide “for any reversion, reverted
interests or use restrictions.” Id. Thus, “the nature” of a claim refers
to one of the three types of interests—a reversionary interest, a reverted
interest, or an interest in a use restriction—the statute permits to be
extended. A claimant satisfies the nature-of-the-claim requirement by
describing which of the three interests is sought to be preserved. In this
case, the statutory interest sought to be preserved is a use restriction.
 The second and third components involve the “time and manner in which
such interest was acquired.” This language presents a more difficult
analysis. In interpreting these requirements, we begin with the phrase
“such interest.” Consistent with the statute as a whole, the legislature
used the word “such” to refer to the “interest” just mentioned in the first
component. This means the “time and manner” components relate to the
acquisition of the reversionary interest, reverted interest, or the
interest in a use restriction required to be identified by the first
component. However, the parties and the district court read the phrase
“was acquired” that follows to mean the second and third components require
the claimant to set forth the time and manner in which the claimant’s
interest was acquired. We think this view fails to consider the purpose of
the statute and means the claimant would be required to disclose
information largely irrelevant to the statutory scheme. We seek to
interpret statutes consistently with their language and purpose, and avoid
interpretations that are unreasonable. Albrecht v. Gen. Motors Corp., 648
N.W.2d 87, 89 (Iowa 2002).
 Generally, the “time and manner” in which a claimant acquired one of
the three types of interests governed by the statute is not relevant to the
statutory scheme. The fourth part of the statute requires the claimant to
have an interest in the claim at the time the verified claim is filed, but
the relevant time under the statutory scheme to limit or extend claims is
based on the time the instrument containing the particular interest is
either recorded or admitted to probate. See Iowa Code § 614.24. These
events start the twenty-one-year limitation period in which to bring an
action or to file a claim to extend a limitation. Thus, the date the
claimant acquired the interest is inconsistent with a limitation and
preservation scheme geared from the date an instrument containing the
interest was recorded. For example, an interest arising from a deed is
acquired when the deed is executed, which may or may not be the date of
recording. See 23 Am. Jur. 2d Deeds § 270, at 252 (2002) (“[A]n interest
in real property is legally and effectively transferred by the delivery of
a deed or other document of conveyance even if the document is not
recorded.”). Similarly, an interest in a will is acquired at the moment of
death of the testator, not the time the will is admitted into probate. See
In re Estate of Micheel, 577 N.W.2d 407, 410 (Iowa 1998) (“A will is
ambulatory in the sense that it speaks from and takes effect on the date of
testator’s death.” (Citations omitted.)). Moreover, the date a person
acquires an interest in a restrictive covenant to a subdivision may have
little relationship to the time when the restrictive covenant was first
recorded. See Compiano, 226 N.W.2d at 248 (stating that in the case of “a
restricting instrument on several lots . . . , followed by deeds to the
lots,” promises in the covenants “do not arise until the first deed is
given”). This case is a good example. Pattison acquired his interest in
the covenant some time after it was recorded when he obtained a deed to a
lot in the subdivision, but the twenty-one-year limitation period for the
restrictive covenant began in 1980. Thus, these examples show that the
date of acquisition of the interest sought to be extended can have little
relationship to the scheme provided by the statute to extend the interest.
Our legislature would not have required a claim to extend time to bring an
action arising from a particular interest to provide information that is
largely irrelevant and confusing to the statutory scheme. See State v.
Petithory, 702 N.W.2d 854, 859 (Iowa 2005) (stating we interpret statutes
in a commonsense manner and avoid absurd results (citing State v. Anderson,
636 N.W.2d 26, 35 (Iowa 2001); Harrington v. State, 659 N.W.2d 509, 520
(Iowa 2003)).
 Instead, we think the words “was acquired” within the phrase “the
time and manner in which the interest was acquired” relate to the
acquisition of one of the three interests reserved or provided for in one
of the four instruments. In other words, the “time and manner” requirement
seeks to identify the deed, conveyance, contract, or will wherein the
particular interest sought to be extended—reversionary interest, reverted
interest, or use restriction—was acquired in the abstract sense, not when
the particular claimant acquired his or her interest. The second and third
components of the statute must be read in this light.
 Therefore, the “manner in which such interest was acquired” requires
the claimant to identify one of the four instruments covered under the
statute containing the relevant interest sought to be extended. Iowa Code
§ 614.24. Likewise, the “time . . . in which such interest was acquired”
requires the claimant to identify the time the particular instrument was
recorded. Id. Moreover, the “was acquired” phrase in this time component
only relates to the acquisition of the particular interest within a
particular instrument. The phrase itself does not impose a time element.
The element of time is covered under the “time and manner” phrase, and
requires the claimant not only to identify the particular deed, conveyance,
contract, or will containing the reversionary interest, reverted interest,
or use restriction (manner the interest was acquired) but also the time
when the deed, conveyance, contract or will was recorded or admitted into
probate. Id.
 In summary, a claimant with an interest, as defined in the statute,
may extend the time to file an action based on a reversionary interest,
reverted interest, or use restriction by filing a verified claim within
twenty-one years from the date the deed, conveyance, contract, or will
providing for the reversionary, reverted, or use-restriction interest was
recorded or admitted to probate. The verified claim must set forth the
nature of the interest (identify whether it is a reversionary, reverted, or
use-restriction interest), the manner the interest was acquired (identify
the deed, conveyance, contract, or will) and the time the deed, conveyance,
or contract was recorded or if acquired by will, the time the will was
probated.
 Under either a strict-compliance or substantial-compliance standard,
the verified claim filed by Pattison satisfied the statute. The claim
identified a use restriction as the claim sought to be extended. It also
identified the restrictive covenants containing the restriction, by book
and page, as well as the date it was recorded. We recognize that section
614.24 is not necessarily applicable to restrictive covenants at the time
they are recorded. Compiano, 226 N.W.2d at 248. However, our view of when
the statute applies to restrictive covenants does not affect what our
legislature may require to be contained in a verified claim to extend the
time to bring actions on restrictive covenants. The legislature has simply
deemed it important for a claim to extend the limitation period to identify
the actual document containing the restrictions.
 IV. Conclusion
 We conclude the district court erred in granting summary judgment to
the Hahns. The claim filed by Pattison complied with the statute. We
reverse the decision of the district court and remand the case for further
proceedings.
 REVERSED AND REMANDED.

-----------------------
 [1]The full text of the statute continues as follows:

 No action based upon any claim arising or existing by reason of
 the provisions of any deed or conveyance or contract or will reserving
 or providing for any reversion, reverted interests or use restrictions
 in and to the land therein described shall be maintained either at law
 or in equity in any court to recover real estate in this state or to
 recover or establish any interest therein or claim thereto, legal or
 equitable, against the holder of the record title to such real estate
 in possession after twenty-one years from the recording of such deed
 of conveyance or contract or after twenty-one years from the admission
 of said will to probate unless the claimant shall, personally, or by
 the claimant’s attorney or agent, or if the claimant is a minor or
 under legal disability, by the claimant’s guardian, trustee, or either
 parent or next friend, shall file a verified claim with the recorder
 of the county wherein said real estate is located within said twenty-
 one year period. In the event said deed was recorded or will was
 admitted to probate more than twenty years prior to July 4, 1965, then
 said claim may be filed on or before one year after July 4, 1965.
 Such claims shall set forth the nature thereof, also the time and
 manner in which such interest was acquired. For the purposes of this
 section, the claimant shall be any person or persons claiming any
 interest in and to said land or in and to such reversion, reverter
 interest or use restriction, whether the same is a present interest or
 an interest which would come into existence if the happening or
 contingency provided in said deed or will were to happen at once.
 Said claimant further shall include any member of a class of persons
 entitled to or claiming such rights or interests.

 The provisions of this section requiring the filing of a
 verified claim shall not apply to the reversion of railroad property
 if the reversion is caused by the property being abandoned for railway
 purposes and the abandonment occurs after July 1, 1980. The holder of
 such a reversionary interest may bring an action based upon the
 interest regardless of whether a verified claim has been filed under
 this section at any time after July 4, 1965.

Iowa Code § 614.24. Close examination of the statute reveals two
inconsistencies. First, while the first sentence of the statute refers to
“reverted interests,” the fourth sentence refers to “reverter interest.”
Id. Second, while the statute refers to “deed or conveyance or contract or
will,” later in the same sentence, it refers to “deed of conveyance or
contract.” Throughout this opinion, we will use the words of the statute
as it is written, although we suspect these inconsistencies are likely the
result of a scrivener’s error that has remained on the books since the
statute was enacted over forty years ago.

 [2]The second paragraph of the statute excludes certain reversionary
interests in railroad property. See id., para. 2 (“The provisions of this
section requiring the filing of a verified claim shall not apply to the
reversion of railroad property if the reversion is caused by the property
being abandoned for railway purposes and the abandonment occurs after July
1, 1980. The holder of such a reversionary interest may bring an action
based upon the interest regardless of whether a verified claim has been
filed under this section at any time after July 4, 1965.”).