**FJORDS NORTH, INC., Appellant,**

v.

**Randy HAHN, Susan Hahn and H & H Homebuilders, Appellees.**

No. 04–0564.

Supreme Court of Iowa.

March 10, 2006.

Daniel DenBeste and Robert M. Hogg of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellant.

Michael J. Pitton of Martinek & Pitton, Iowa City, for appellees.

CADY, Justice.

This case stems from a dispute between a real estate developer and an owner of a lot in its development over the construction of a house claimed to be in violation of restrictive covenants recorded by the developer in 1980. The developer brought

an action to enjoin the homeowner's construction. The homeowner moved for summary judgment, claiming the applicable limitation period to bring the action had expired. The district court agreed and granted summary judgment in the homeowner's favor. The developer appeals.

## I. Background Facts and Proceedings

Fjords North, Inc. is the developer of a subdivision near North Liberty, Iowa named Fjords North Addition. H&H Home Builders, Inc., a corporation partially owned by Randy and Susan Hahn, is the owner of lot 52 in the Fjords North Addition.

Fjords North filed a set of restrictive covenants for the development on March 26, 1980 with the Johnson County recorder. One of the covenants provided:

No building shall be erected on any lot unless the design and location is in harmony with existing structures and locations. Plans and specifications of proposed houses and their locations on the site shall be submitted to Fjords North, Inc., the developer, for its written approval before commencement of construction. This restriction is to apply to all future home owners in this area. In any case no dwelling shall be permitted on any lot described herein having total living area of less than 2,000 square feet.

The covenants further stated:

[T]hese covenants are to run with the land and shall be binding upon all of the parties and all persons claiming under them for ten (10) years, at which time said covenants shall automatically be extended for successive periods of ten (10) years unless by vote of the majority of the owners of the lots it is agreed to change said covenants in whole or in part.

The first lot in the development was sold by deed recorded on April 2, 1980, and the developer has been selling other lots since that time.

On March 22, 2001, Mark Pattison, an officer of the Fjords North Homeowners' Association, filed a document with the Johnson County recorder entitled "Claim to Extend Use Restrictions Pursuant to § 614.24 of the Iowa Code." The claim indicated it was filed for the purpose of extending the time to bring an action to enforce the use restrictions for the development an additional twenty-one years. See Iowa Code § 614.24 (2001) ("No action based on any claim arising or existing by reason of the provisions of any ... contract ... reserving or providing for ... use restrictions in and to the land therein described shall be maintained either at law or in equity ... after twenty-one years from the recording of such ... contract ... unless the claimant shall ... file a verified claim with the recorder of the county wherein said real estate is located within said twenty-one year period."). It further stated that Pattison held a present fee simple interest in lot 51 of the development, platted and recorded in book 19, page 67 of the Johnson County plat records, and that the use restrictions were set forth in restrictive covenants dated January 31, 1980 and recorded March 26, 1980 in book 570, page 14.

On December 29, 2002, Randy Hahn submitted plans for a house he planned to build on lot 52 to the Homeowners' Association for approval. After Hahn failed to receive a prompt response to the plans from the Homeowners' Association, he began construction on January 7, 2003 by digging and pouring the foundation for the house. The association then objected to Hahn's plans and opined that the proposed home was not in harmony with the existing homes in the development, in violation of

the restrictive covenants. The Association, through its attorney, demanded that Hahn cease construction. Hahn continued to build the house.

On January 21, 2003, Fjords North filed a petition in district court seeking damages and temporary and permanent injunctive relief. The Hahns answered the petition. They asserted they complied with the covenants, Fjords North unreasonably failed to timely approve their plans, and the covenants had expired. The court held a hearing on Fjords North's application for a temporary injunction on March 19. On March 20, the court denied the application on three grounds. The court found no evidence that Fjords North would be irreparably harmed if construction continued, no evidence that other remedies were inadequate, and no likelihood that Fjords North would succeed on the merits.

The Hahns then moved for summary judgment. They asserted the verified claim filed by Pattison failed to comply with the statutory requirement that a claim to extend the time to file an action set forth the "time and manner" in which the claimant's interest was acquired. They pointed out the claim only identified the date the subdivision's original restrictive covenants were recorded, without further describing the time and manner that Pattison's interest in the restrictive covenants was acquired.

Fjords North resisted the summary judgment motion on three alternative grounds. First, it argued that the "time and manner" requirement did not apply to claims filed after July 4, 1966. Second, it asserted the claim substantially complied with the "time and manner" requirement. Third, it argued that the notice should be reformed to cure any defects. The district court granted summary judgment, and Fjords North appealed.

## II. Standard of Review

The standard of review for rulings granting summary judgment is well known:

> "We review a ruling on a motion for summary judgment for correction of errors at law. 'A motion for summary judgment should only be granted if, viewing the evidence in the light most favorable to the nonmoving party, 'he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "

*Otterberg v. Farm Bureau Mut. Ins. Co.,* 696 N.W.2d 24, 27 (Iowa 2005) (citations omitted).

## III. Discussion

Iowa Code section 614.24, also known as the Stale Uses and Reversions Act (SURA), provides, in relevant part:

> No action based on any claim arising or existing by reason of the provisions of any deed or conveyance or contract or will reserving or providing for any reversion, reverted interests or use restrictions in and to the land therein described shall be maintained either at law or in equity in any court ... after twenty-one years from the recording of such deed of conveyance or contract or after twenty-one years from the admission of said will to probate unless the claimant shall, personally, or by the claimant's attorney or agent, ... file a verified claim with the recorder of the county wherein said real estate is located within said twenty-one year period. In the event said deed was recorded or the will was admitted to probate more than twenty years prior to July 4, 1965, then said claim may be filed on or before one

year after July 4, 1965. Such claims shall set forth the nature thereof, also the time and manner in which such interest was acquired.[1]

Iowa Code § 614.24. If a claim is properly filed, it extends or preserves the time to bring an action on the claim for an additional twenty-one years. *See id.* § 614.25 ("The filing of such claim shall extend for a further period of twenty-one years the time within which such action may be brought by *any person* entitled thereto, and successive claims for further like extensions may be filed." (Emphasis added.)). We have said the purpose of this statute was to simplify land transfers in Iowa by shortening the title-search period for these types of claims. *Compiano v.*

*Kuntz,* 226 N.W.2d 245, 248 (Iowa 1975); *Presbytery of Se. Iowa v. Harris,* 226 N.W.2d 232, 235 (Iowa 1975). Yet, the statute allows interested persons to keep stale reversionary and use restrictions alive if they desire. *See* H.F. 115, 61st Gen. Assemb., Reg. Sess. (Iowa 1965). The statute is to be applied liberally to further its purposes. *Calamus Cmty. Sch. Dist. v. Rusch,* 299 N.W.2d 489, 490 (Iowa 1980).

██ Restrictive covenants are contracts. *Compiano,* 226 N.W.2d at 249; 20 Am. Jur.2d *Covenants, Etc.* § 149, at 668 (2005). Consequently, they are covered by section 614.24. As one commentator explained,

1. The full text of the statute continues as follows:

No action based upon any claim arising or existing by reason of the provisions of any deed or conveyance or contract or will reserving or providing for any reversion, reverted interests or use restrictions in and to the land therein described shall be maintained either at law or in equity in any court to recover real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title to such real estate in possession after twenty-one years from the recording of such deed of conveyance or contract or after twenty-one years from the admission of said will to probate unless the claimant shall, personally, or by the claimant's attorney or agent, or if the claimant is a minor or under legal disability, by the claimant's guardian, trustee, or either parent or next friend, shall file a verified claim with the recorder of the county wherein said real estate is located within said twenty-one year period. In the event said deed was recorded or will was admitted to probate more than twenty years prior to July 4, 1965, then said claim may be filed on or before one year after July 4, 1965. Such claims shall set forth the nature thereof, also the time and manner in which such interest was acquired. For the purposes of this section, the claimant shall be any person or persons claiming any in-

terest in and to said land or in and to such reversion, reverter interest or use restriction, whether the same is a present interest or an interest which would come into existence if the happening or contingency provided in said deed or will were to happen at once. Said claimant further shall include any member of a class of persons entitled to or claiming such rights or interests.

The provisions of this section requiring the filing of a verified claim shall not apply to the reversion of railroad property if the reversion is caused by the property being abandoned for railway purposes and the abandonment occurs after July 1, 1980. The holder of such a reversionary interest may bring an action based upon the interest regardless of whether a verified claim has been filed under this section at any time after July 4, 1965.

Iowa Code § 614.24. Close examination of the statute reveals two inconsistencies. First, while the first sentence of the statute refers to "reverted interests," the fourth sentence refers to "reverter interest." *Id.* Second, while the statute refers to "deed *or* conveyance or contract or will," later in the same sentence, it refers to "deed *of* conveyance or contract." Throughout this opinion, we will use the words of the statute as it is written, although we suspect these inconsistencies are likely the result of a scrivener's error that has remained on the books since the statute was enacted over forty years ago.

Covenants, especially neighborhood planning covenants, generating proprietary rights in equity frequently outlive their utility and if unlimited as to time, become mere clogs on title. Such interests are ordinarily beneficial either to the land affected or to adjacent lands, facilitating the highest and best use, when created, and may remain beneficial for more than a century. . . . Limitations on land use running in perpetuity may well become not only clogs on title, but clogs on alienation and utilization of land.

Arthur E. Ryman, Jr., *The Iowa "Stale Uses and Reversions Statute": Parameters and Constitutional Limitations,* 19 Drake L.Rev. 56, 60–61 (1969).

■ We begin our analysis of the issues on appeal by examining the statute. The complete statute is written in two paragraphs, but only the first paragraph is relevant to this appeal.[2] The first sentence of this paragraph sets forth the objective and scope of the statute. *See* Iowa Code § 614.24, para. 1 ("No action based upon any claim arising or existing by reason of the provisions of any deed or conveyance or contract or will reserving or providing for any reversion, reverted interests or use restrictions in and to the land therein described shall be maintained either at law or in equity in any court to recover real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title to such real estate in possession after twenty-one years from the recording of such deed of conveyance or contract or after twenty-one years from the admission of said will to probate

unless the claimant shall, personally, or by the claimant's attorney or agent, or if the claimant is a minor or under legal disability, by the claimant's guardian, trustee, or either parent or next friend, shall file a verified claim with the recorder of the county wherein said real estate is located within said twenty-one year period."). It declares that actions based on claims arising from a reversion interest, reverted interest, or use restriction contained in any deed, conveyance, contract, or will may not be brought after twenty-one years from the recording of the deed, conveyance, or contract, or the admission of the will into probate, unless the claimant files a verified claim with the county recorder within the twenty-one-year period. *Id.* Thus, the statute applies to claims based on three types of provisions (reversion interests, reverted interests, and use restrictions) contained in one of four types of instruments (deed, conveyance, contract, or will). *Id.*

· The second sentence of the first paragraph contains a retroactivity provision. *See id.* ("In the event said deed was recorded or will was admitted to probate more than twenty years prior to July 4, 1965, then said claim may be filed on or before one year after July 4, 1965."). The statute was enacted in 1965 and became effective July 4 of that year. 1965 Iowa Acts ch. 428, § 1; *see* Iowa Const. art. III § 26 (1965) (stating default effective date for statutes is July 4); *see also* 1965 Iowa Acts ch. 480 (amending constitution to change default effective date from July 4 to July 1; submitting amendment for voter approval in 1966 election). Without a retroactivity provision, existing claims beyond

---

**2.** The second paragraph of the statute excludes certain reversionary interests in railroad property. *See id.,* para. 2 ("The provisions of this section requiring the filing of a verified claim shall not apply to the reversion of railroad property if the reversion is caused by the property being abandoned for railway

purposes and the abandonment occurs after July 1, 1980. The holder of such a reversionary interest may bring an action based upon the interest regardless of whether a verified claim has been filed under this section at any time after July 4, 1965.").

the limitation period would be precluded. However, the legislature specifically made the statute applicable to claims to extend actions based on instruments recorded or admitted into probate more than twenty years prior to July 4, 1965 and gave persons claiming an interest based on these instruments one year after the effective date of the statute to file their claims with the county recorder.

The third sentence of the first paragraph describes the requirements of a verified claim. *See* Iowa Code § 614.24, para. 1 ("Such claims shall set forth the nature thereof, also the time and manner in which such interest was acquired."). It provides that the claims must set forth the "nature thereof, also the time and manner in which such interest was acquired." *Id.*

The last two sentences of the first paragraph set forth who may be a claimant. *See id.* ("For the purposes of this section, the claimant shall be any person or persons claiming any interest in and to said land or in and to such reversion, reverter interest or use restriction, whether the same is a present interest or an interest which would come into existence if the happening or contingency provided in said deed or will were to happen at once. Said claimant further shall include any member of a class of persons entitled to or claiming such rights or interests."). The claimant must be a person who has a present interest or future interest in the land or in the reversion, reverted interest, or use restriction, and includes any member of a class claiming such an interest. *Id.*

The primary argument by Fjords North is that the third sentence—describing the requirements for what must be included in a verified claim—only applies to claims described in the second sentence, the retroactivity provision. Fjords North relies on the following language contained in the second and third parts of the statute:

> In the event said deed was recorded ... more than twenty years prior to July 4, 1965, then said claim may be filed on or before one year after July 4, 1965. Such claims shall set forth the nature thereof, also the time and manner in which such interest was acquired.

*Id.* Fjords North argues that the phrase "[s]uch claims" means the requirements set forth in that sentence only apply to claims referred to in the preceding sentence—i.e., claims based on deeds recorded before July 4, 1945. Fjords North relies on the last-antecedent rule to support this argument. It postulates the legislature wanted to impose specific requirements only to help identify ancient claims under the retroactivity provision that may have been recorded prior to the modern recording system.

Under the last-antecedent rule, "[r]eferential and qualifying words and phrases, where no contrary intent appears, refer solely to the last antecedent." 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:33, at 369 (6th ed.2000) [hereinafter Singer]; *accord Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 376, 380 (Iowa 2000) ("Under the doctrine of last preceding antecedent, qualifying words and phrases refer only to the immediately preceding antecedent, unless a contrary legislative intent appears." (citing *State of Iowa ex rel. Dep't of Transp. v. Gen. Elec. Credit Corp.*, 448 N.W.2d 335, 345 (Iowa 1989))). Moreover, it has been held that use of the word "such" normally shows the legislature intended to limit the clause to the last antecedent subject. *See People v. Clark*, 10 Cal.App.4th 1259, 13 Cal.Rptr.2d 209, 212–13 (1992) (" 'Such' is used in statutes to make clear that the second reference is to exactly the same concept mentioned previously." (citing *People v. Jones*, 46 Cal.3d 585, 250 Cal.Rptr. 635, 758 P.2d 1165

(1988))); *Eagle Hill Corp. v. Comm'n on Hosps. & Health Care,* 2 Conn.App. 68, 477 A.2d 660, 665 (1984) ("The use of the word 'such' in grammatical usage refers to the last antecedent." (citing *LaProvidenza v. State Employees' Ret. Comm'n,* 178 Conn. 23, 420 A.2d 905 (1979))); *In re De Lescaille's Estate,* 187 N.W.2d 741, 744 (Iowa 1971) ("The word 'such' ordinarily refers back to the last antecedent." (citing *United States v. Legg,* 157 F.2d 990, 992 (4th Cir.1946); *In re Wallace's Estate,* 98 Cal.App.2d 285, 219 P.2d 910 (1950))); *McArtor v. State,* 699 P.2d 288, 290 (Wyo. 1985) ("The accepted rule of construction is that 'such' refers to the character of that which immediately precedes it unless a contrary legislative intent is evidenced." (Citations omitted.)).

However, the last-antecedent rule is not inflexible, and it does not apply where the entire act reveals that the qualifying sentence applies to several preceding subjects. Singer § 47:33, at 372. Ultimately, we look to the intent of our legislature.

When the statute in this case is read in context, it is obvious that the nature-, time-, and manner-of-the-claim requirements apply to all claims, not just those claims covered under the retroactivity provision. The statute first declares that stale claims can be extended by filing a verified claim within the twenty-one-year period, and then it declares that claims otherwise extinguished because they predated the effective date of the statute by more than twenty years can be extended through the retroactivity provision. Iowa Code § 614.24. Thus, the statute addresses the two circumstances when claims can be extended. After these two circumstances are described, the statute then describes the necessary contents of the verified claims to extend by referring to "[s]uch claims" in the plural. *Id.* This approach, and the plural use of the word "claims," reveals that the claim requirements set forth in the third sentence of the statute apply to the two circumstances just described, not merely the most immediate circumstance. Thus, the language of the statute supports the conclusion that all verified claims must meet the requirements imposed by the third sentence of the statute. Furthermore, there is no reason to believe the legislature had heightened concerns about ancient deeds or the past recording system. It is obvious that the statute sought to require some minimal content in verified claims so that all claims sought to be extended could be properly identified.

Fjords North next argues that the claim filed in this case adequately complied with the statutory requirements for a claim. Ultimately, it asserts that the statute only requires substantial compliance with the statutory terms.

Before we address the substantial-compliance argument, it is necessary to step back and identify the information required to be contained in a verified claim filed under the statute. The district court and the parties viewed the statute to require the verified claim to describe the nature of the underlying claim and the time and manner in which the *claimant's* interest was acquired.

The relevant language of the statute at the heart of this case provides: "Such claims shall set forth the *nature* thereof, also the *time* and *manner* in which interest was acquired." *Id.* (emphasis added). We have already determined that the phrase "[s]uch claims" refers to all verified claims to extend the time to file an action. The statute then proceeds to identify the three essential components of a verified claim in terms of nature, time, and manner. We will consider each component in turn.

■ In describing the first requirement of a verified claim, the legislature used the

phrase "the nature thereof." Having determined that the immediately preceding phrase "[s]uch claims" refers to verified claims to extend, the phrase "the nature thereof" that follows can only refer to the nature of the claim sought to be preserved by the claimant. As previously indicated, the first part of the statute makes it clear that it only applies to actions based on claims arising from "provisions" in various instruments that reserve or provide "for any reversion, reverted interests or use restrictions." *Id.* Thus, "the nature" of a claim refers to one of the three types of interests—a reversionary interest, a reverted interest, or an interest in a use restriction—the statute permits to be extended. A claimant satisfies the nature-of-the-claim requirement by describing which of the three interests is sought to be preserved. In this case, the statutory interest sought to be preserved is a use restriction.

▇▇▇ The second and third components involve the "time and manner in which such interest was acquired." This language presents a more difficult analysis. In interpreting these requirements, we begin with the phrase "such interest." Consistent with the statute as a whole, the legislature used the word "such" to refer to the "interest" just mentioned in the first component. This means the "time and manner" components relate to the acquisition of the reversionary interest, reverted interest, or the interest in a use restriction required to be identified by the first component. However, the parties and the district court read the phrase "was acquired" that follows to mean the second and third components require the claimant to set forth the time and manner in which the *claimant's* interest was acquired. We think this view fails to consider the purpose of the statute and means the claimant would be required to disclose information largely irrelevant to the statutory scheme. We seek to interpret statutes consistently with their language and purpose, and avoid interpretations that are unreasonable. *Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 89 (Iowa 2002).

Generally, the "time and manner" in which a claimant acquired one of the three types of interests governed by the statute is not relevant to the statutory scheme. The fourth part of the statute requires the claimant to have an interest in the claim at the time the verified claim is filed, but the relevant time under the statutory scheme to limit or extend claims is based on the time the instrument containing the particular interest is either recorded or admitted to probate. *See* Iowa Code § 614.24. These events start the twenty-one-year limitation period in which to bring an action or to file a claim to extend a limitation. Thus, the date the claimant acquired the interest is inconsistent with a limitation and preservation scheme geared from the date an instrument containing the interest was recorded. For example, an interest arising from a deed is acquired when the deed is executed, which may or may not be the date of recording. *See* 23 Am.Jur.2d *Deeds* § 270, at 252 (2002) ("[A]n interest in real property is legally and effectively transferred by the delivery of a deed or other document of conveyance even if the document is not recorded."). Similarly, an interest in a will is acquired at the moment of death of the testator, not the time the will is admitted into probate. *See In re Estate of Micheel*, 577 N.W.2d 407, 410 (Iowa 1998) ("A will is ambulatory in the sense that it speaks from and takes effect on the date of testator's death." (Citations omitted.)). Moreover, the date a person acquires an interest in a restrictive covenant to a subdivision may have little relationship to the time when the restrictive covenant was first recorded. *See Compiano*, 226 N.W.2d at 248 (stating that in the case of "a restricting instrument on several lots . . ., followed by deeds to the lots," promises in the covenants "do

not arise until the first deed is given"). This case is a good example. Pattison acquired his interest in the covenant some time after it was recorded when he obtained a deed to a lot in the subdivision, but the twenty-one-year limitation period for the restrictive covenant began in 1980. Thus, these examples show that the date of acquisition of the interest sought to be extended can have little relationship to the scheme provided by the statute to extend the interest. Our legislature would not have required a claim to extend time to bring an action arising from a particular interest to provide information that is largely irrelevant and confusing to the statutory scheme. *See State v. Petithory,* 702 N.W.2d 854, 859 (Iowa 2005) (stating we interpret statutes in a commonsense manner and avoid absurd results (citing *State v. Anderson,* 636 N.W.2d 26, 35 (Iowa 2001); *Harrington v. State,* 659 N.W.2d 509, 520 (Iowa 2003)).

Instead, we think the words "was acquired" within the phrase "the time and manner in which the interest was acquired" relate to the acquisition of one of the three interests reserved or provided for in one of the four instruments. In other words, the "time and manner" requirement seeks to identify the deed, conveyance, contract, or will wherein the particular interest sought to be extended— reversionary interest, reverted interest, or use restriction—was acquired in the abstract sense, not when the particular claimant acquired his or her interest. The second and third components of the statute must be read in this light.

Therefore, the "manner in which such interest was acquired" requires the claimant to identify one of the four instruments covered under the statute containing the relevant interest sought to be extended. Iowa Code § 614.24. Likewise, the "time ... in which such interest was acquired" requires the claimant to identify the time

the particular instrument was recorded. *Id.* Moreover, the "was acquired" phrase in this time component only relates to the acquisition of the particular interest within a particular instrument. The phrase itself does not impose a time element. The element of time is covered under the "time and manner" phrase, and requires the claimant not only to identify the particular deed, conveyance, contract, or will containing the reversionary interest, reverted interest, or use restriction (manner the interest was acquired) but also the time when the deed, conveyance, contract or will was recorded or admitted into probate. *Id.*

In summary, a claimant with an interest, as defined in the statute, may extend the time to file an action based on a reversionary interest, reverted interest, or use restriction by filing a verified claim within twenty-one years from the date the deed, conveyance, contract, or will providing for the reversionary, reverted, or use-restriction interest was recorded or admitted to probate. The verified claim must set forth the *nature* of the interest (identify whether it is a reversionary, reverted, or use-restriction interest), the *manner* the interest was acquired (identify the deed, conveyance, contract, or will) and the *time* the deed, conveyance, or contract was recorded or if acquired by will, the time the will was probated.

 Under either a strict-compliance or substantial-compliance standard, the verified claim filed by Pattison satisfied the statute. The claim identified a use restriction as the claim sought to be extended. It also identified the restrictive covenants containing the restriction, by book and page, as well as the date it was recorded. We recognize that section 614.24 is not necessarily applicable to restrictive covenants at the time they are recorded. *Compiano,* 226 N.W.2d at 248.

However, our view of when the statute applies to restrictive covenants does not affect what our legislature may require to be contained in a verified claim to extend the time to bring actions on restrictive covenants. The legislature has simply deemed it important for a claim to extend the limitation period to identify the actual document containing the restrictions.

## IV. Conclusion

We conclude the district court erred in granting summary judgment to the Hahns. The claim filed by Pattison complied with the statute. We reverse the decision of the district court and remand the case for further proceedings.

**REVERSED AND REMANDED.**