# IN THE COURT OF APPEALS OF IOWA

No. 22-0600
Filed April 26, 2023

**RICHARD SCHOLTUS, LINDA SCHOLTUS, and FOWLER LAND, LLC,**
Plaintiffs-Appellants,

**vs.**

**PARKSIDE KNOLLS-SOUTH HOMEOWNERS ASSOCIATION and PARKSIDE KNOLLS HOMEOWNERS ASSOCIATION,**
Defendants-Appellees.

_____

Appeal from the Iowa District Court for Appanoose County, Daniel P. Wilson, Judge.

Landowners appeal a declaratory judgment confirming the validity of certain restrictive covenants to real property. **REVERSED AND REMANDED.**

Edward E. Cox of Craver, Grothe & Cox, LLP, Centerville, and James Anthony Sinclair of Sinclair & Associates, P.C., West Des Moines, for appellants.

John R. Webber III of Harrison, Moreland, Webber, & Simplot, P.C., Ottumwa, for appellees.

Heard by Greer, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

This appeal concerns the authority of a homeowners association to enact new restrictive covenants on real property. The district court found the restrictive covenants at issue were duly adopted by the Parkside Knolls-South Homeowners Association (the HOA). However, the HOA's governing documents did not express authority to create restrictive covenants. Unless otherwise agreed to, all landowners must manifest assent to enter into a covenant restricting the use of their land. Because Richard and Linda Scholtus (the Scholtuses) did not assent to the covenants at issue, we find them invalid. We reverse the contrary ruling of the district court and remand for entry of an order consistent with this opinion.

### I. *Background Facts and Proceedings.*

In June 1972, Rathbun Investment Corporation (Rathbun) executed a consent to certain protective and restrictive covenants as the sole owner of a subdivision known as Parkside Knolls-South. The consent was recorded with the Appanoose County Recorder. Paragraph (P) of the consent required Rathbun to establish a homeowners association "for the purpose of maintaining parks and grounds that will be conveyed to the Association when the plan . . . for the development of the real estate above described has been completed." It also required all owners of lots in the subdivision to be members of said homeowners association. The Parkside Knolls-South Homeowners Association was duly established as a nonprofit corporation. Amendments to the covenants were recorded on November 30, 1972, and March 28, 1978.

Because no subsequent claims were recorded within twenty-one years, the parties agree the restrictive covenants expired in 1999 pursuant to Iowa Code

section 614.24 (2021). Nevertheless, the HOA remained in existence and continued to operate with respect to matters other than the restrictive covenants. In 2001, the Scholtuses purchased multiple lots within the subdivision, including Outlot 3. Since, as the parties agree, the 1972 restrictive covenants expired in 1999, the lots were not subject to restrictive covenants at the time of this purchase.

The HOA held an annual meeting in 2002. The HOA's minutes for that meeting include an update that "the Board will be working on the revision of the Covenants, and that there won't be a need for many changes." In March 2003, the HOA sent notice of the next annual meeting and indicated that items of business would include "updating" the restrictive covenants. The minutes of the HOA's annual meeting, held on April 12, 2003, reflect:

> Seven members were present, five of whom were eligible to vote. There were four proxies from members who also were eligible voters, making a total of 9 voters. Only 5 were needed for a quorum, so the meeting proceeded.
> . . .
> The President went through the revised Covenants with the members, and discussion was held on several points. Following the discussion Ron Laird moved to adopt the Covenants. It was seconded by Mike Sheehan, and carried.

At this meeting, Mike Sheehan was elected as president and Ron Laird as secretary of the HOA. There is no other indication of voting or assent by the members.[1] The previous secretary was the only signatory to the minutes. On May 7, 2003, the "amended" consent to protective and restrictive covenants was filed

---

[1] The record is unclear as to how the quorum was reached. Previous indications were that fifty-three lots existed within the subdivision. According to the bylaws, members are titleholders of a lot or lots, or townhouse within the subdivision. Each member is entitled to one vote, unless the membership or other fees assessed by the HOA are unpaid.

with the Appanoose County Recorder. It states that Parkside Knolls Homeowners Association "is a not for profit corporation and is the owner in fee simple of the real estate." The consent purports to have been "[a]mended this date by resolution duly adopted by Parkside Knolls Homeowners Association" and is signed by the HOA's president and secretary. Among other restrictions, it states, "Outlots 3, 4 and 5 may be used for recreational purposes, such as parks, playgrounds, private lakes, and golf courses or other private recreational activities."

In 2020, Fowler Land, LLC (Fowler) entered into an agreement to purchase Outlot 3 from the Scholtuses. The agreement is reportedly contingent upon the ability to use the land for a purpose not in conformance with the 2003 covenants. In February 2021, the Scholtuses and Fowler filed a petition for declaratory judgment, seeking a determination that the restrictive covenants adopted in 2003 are without legal force and effect. The district court found the 2003 covenants are valid because they were adopted following the appropriate procedure in the HOA's bylaws, including requisite notice, a quorum of members, and approval by a majority of the members. The Scholtuses and Fowler filed a timely appeal.

## II. Review.

As this case was tried in equity, we apply a de novo standard of review. *In re Coe College*, 935 N.W.2d 581, 586 (Iowa 2019). "Nevertheless, we give weight to the factual findings of the district court, especially with respect to determinations of witness credibility." *Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 642–43 (Iowa 2019).

### III. Discussion.

The appellants argue the restrictive covenants between the HOA and the Scholtuses are invalid because they lack a key element of contract construction: mutual assent. There is no question that "[r]estrictive covenants are contracts." *Fjords N., Inc. v. Hahn*, 710 N.W.2d 731, 735 (Iowa 2006). "[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (Am. Law Inst. 1981). "Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance." *Id.* § 18. Here, the Scholtuses did not make a promise or otherwise agree to restrictive covenants encumbering their land. Our supreme court has described how lot owners may come to promise land use restrictions to one another:

> Covenants are agreements or promises. The agreements or promises here are to use real estate for certain purposes only. Such promises may be made in a variety of ways, as (a) by a single restricting instrument in which lot owners join, or (b) by a landowner's series of deeds containing restrictions on lots in a tract, or, as here, (c) by a landowner's restricting instrument on lots in a tract followed by deeds to those lots. The result is the same in all these forms of restriction: the lot owners promise each other to use their lots in conformity with the restrictions. The times at which the promises arise, however, vary with the form in which the promises are made.

*Compiano v. Kuntz*, 226 N.W.2d 245, 248 (Iowa 1975).

Here, there is no evidence the Scholtuses made such a promise. The original covenants expired by the time they purchased the property. The "amended" consent filed in 2003 could possibly be construed as a "single restricting instrument in which lot owners join[ed]." *See id.* However, this consent certainly did not include all lot owners, there is no indication the Scholtuses joined

in that execution, and the document purports to be adopted by the HOA. The record is not clear whether the HOA may own one or more lots in the subdivision, but it certainly does not own all of the lots.[2] "Under our rule of construction, any doubts about the applicability of the use restrictions must be resolved in favor of the free use of the properties." *Amana Soc'y v. Colony Inn, Inc.*, 315 N.W.2d 101, 116 (Iowa 1982). In such cases when it does not own all of the land, we hold that a homeowners association does not have outright authority to impose new restrictive covenants on its members. *See id.* at 115–16 (finding the original use restrictions signed by all members of the Amana Society expired pursuant to statute and the Amana Society could not prove the existence of a new contractual relationship); *see also Compiano*, 226 N.W.2d at 248 (requiring the lot owners to make a promise to each other). That is not to say it could never happen. There is simply no record of the members, or the Scholtuses specifically, agreeing to this arrangement.[3]

Moreover, we cannot find in the record that the Scholtuses are paying members of the HOA, and we are not aware of any legal vehicle that would compel them to join without restrictive covenants in place at the time of their purchase of the lots. The HOA's counterargument is that (1) the Scholtuses waited eighteen years after receiving notice of the new covenants to take action and (2) a board member testified that the Scholtuses requested the HOA enforce the covenants

---

[2] Curiously, the 2003 consent states that the HOA is the owner in fee simple of the real estate described, which replicates the language of the original consent when Rathbun did in fact own the land outright.

[3] Neither the HOA's articles of incorporation nor the Scholtuses' property deed are found in the record. Accordingly, we cannot opine as to the scope and nature of their relationship.

against a neighbor in approximately 2019 when they complained about tall grass. However, we find the mere knowledge that restrictive covenants existed does not constitute manifestation of assent to be bound by those covenants, especially considering the covenants were passed off as amendments to covenants that members might not have known expired. *See Jones v. Beiber*, 103 N.W.2d 364, 365 (Iowa 1960) ("While the law favors the free legal use of land by its owner and frowns upon restrictive covenants[,] they are recognized and enforce[a]ble in a court of equity *where the intention of the parties is clear* and the restrictions reasonable." (emphasis added)). If the HOA's timing argument amounts to a request to apply the doctrine of laches, we find it has failed to prove undue prejudice resulting from the delay. *See Henderson v. Millis*, 373 N.W.2d 497, 505 (Iowa 1985) ("Laches consists of unreasonable delay in asserting rights which causes another undue prejudice, proven by clear and convincing evidence. Mere passage of time is not enough . . . ."). Similarly, there is insufficient detail surrounding the complaint to conclude that the Scholtuses meant to make themselves party to the restrictive covenants. The Scholtuses also reportedly erected structures on their property since 2003 that have not been in conformance with the alleged covenants but have not received an accusation of violation.

The HOA also relies on the district court's finding that the covenants were adopted in accordance with its bylaws. Although we agree the action was ostensibly carried out in compliance with the notice, quorum, and voting requirements for member action set forth by Iowa Code chapter 504 and the HOA's bylaws, there is no authority provided for the adoption of restrictive covenants. The HOA's bylaws indicate, "Meetings to amend covenants will be as provided in the

Covenants." The covenants were expired by the time the bylaws were adopted in 2002, and there is no record of prior-existing bylaws. Even if the HOA did not realize the covenants were expired, amendment was not properly carried out because the consent creating the original covenants states that amendment requires a majority vote of the legal titleholders with one vote per lot. This procedure is different from the voting structure outlined for member action in the bylaws, which permits one vote per member, while members may own one or more lots or a townhouse in the subdivision. It is also not clear if a lot may have more than one member in the HOA if there are multiple owners listed on the title.

Because the Scholtuses did not manifest assent to the 2003 covenants, we find they did not form a contract, and the covenants have no legal force and effect against the Scholtuses. With this result, we do not reach the appellants' additional arguments for invalidating the covenants based on fraud and an unconstitutional taking. We reverse the contrary ruling of the district court and remand for entry of an order consistent with this opinion.

**REVERSED AND REMANDED.**