# IN THE COURT OF APPEALS OF IOWA

No. 23-1557
Filed August 7, 2024

**WOHLOA, INC.,**
        Plaintiff-Appellee,

**vs.**

**THE LAKE CABIN, LLC,**
        Defendant-Appellant.

---

**THE LAKE CABIN, LLC,**
        Counterclaim Plaintiff-Appellant,

**vs.**

**WOHLOA, INC,**
        Counterclaim Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dickinson County, Charles Borth, Judge.

A property owner appeals a declaratory judgment confirming its obligations as a member of a neighborhood homeowner association. **AFFIRMED.**

David J. Stein, Jr. of Stein Law Office, Milford, for appellant.

Jacqueline L. Grotewold of Murphy, Collins & McGill, PLC, Le Mars, for appellee.

Heard by Tabor, P.J., Schumacher, Ahlers, Badding, Chicchelly, Buller, and Langholz, JJ., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CHICCHELLY, Judge.**

A property owner appeals the declaratory judgment confirming its obligation to pay dues and special assessments to a neighborhood homeowner association. It also challenges the award of attorney fees. Upon our review, we affirm.

### I.    Background Facts and Proceedings.

West Okoboji Harbor was developed and platted in 1970. The surrounding marshy area was transformed into a manmade canal system called West Lake Okoboji Harbor.[1] The harbor connected the land to West Lake, creating waterfront lots out of originally-inland property. On the other side were properties that already abutted West Lake and did not require the harbor for water access.[2]



---

[1] The canal system was created by enclosing the waterway via construction of a harbor wall and adjacent boardwalk.

[2] This map was admitted as an exhibit in the proceedings and depicts Lake Cabin in relation to the other West Lake Okoboji Harbor properties.

The original 1970 plat subdivided both the harbor and lakefront land into lots, established restrictive covenants, and created a "Lot Owners Association"[3] The Association was tasked with, among other things, installing and maintaining utilities and sharing the costs among lot owners. The original plat also provided that the proprietors were responsible for maintenance of the harbor wall for five years; after that time, each individual lot owner became responsible for the area of the harbor wall connected to their lot. Over the years, the plat underwent changes, such as amendments to the restrictive covenants and two additions that added lots under its purview. After the additions, the Association had 145 members: 136 lots bordered the harbor, seven directly bordered West Lake, and two abutted both the harbor and lake. The Association continued to operate, assessing dues to the owners of the lots.

In 1987, John and Shiuvaun Dougherty bought one of the seven lots on the lakefront side of the development. They built a house on the property and used it as a second home for their family for the next few decades. Over the years, the property passed from the Doughertys to their trusts and, eventually in 2021, to a limited-liability company owned by their children, Lake Cabin, LLC (Lake Cabin). Through every transfer, the dues to the Association were consistently paid, up until the dispute that initiated this proceeding.

In 2005, the Association became aware that the restrictive covenants for the development had expired under the law.[4] To remedy this, the Association's

---

[3] We will hereinafter refer to the established homeowners' association as "the Association."

[4] Restrictive covenants expire after twenty-one years unless they are properly renewed. *See* Iowa Code § 614.24 (2003). Without the necessary renewal, the

counsel advised that it reinstitute the covenants, which would require all lot owners and mortgage holders to consent in writing, or petition the Dickinson County zoning board for an overlay district. The Association chose the latter. With county approval, in 2008, the Association formed the overlay district "to have certain guidelines in place that would be present in a restrictive covenant and similar types of associations." The lakefront properties, including the Doughertys' property, were not part of this overlay district.[5]

In September 2020, the Association proposed to its members obtaining a $4,500,000 loan "for the sole purpose of repairing [and] reconstructing the harbor seawall, boardwalk, and associated structures." The proposal passed. Members were assessed $345 per quarter to fund the project. Around the same time, the Association was in discussions about incorporating "for liability purposes, potentially for tax purposes." The Association planned to discuss the details at a meeting and hold a vote to merge the prior Association into WOHLOA, Inc. (WOHLOA).

The Dougherty children retained counsel and later testified it was with the intent to resign from the still-unincorporated Association. In November 2020, their counsel sent a letter to the Association, stating that the "Doughertys should not have to pay any assessment for the Harbor/Sea Wall when they do not have any

"use restrictions" in the original restrictive covenants expired in 1991. The parties do not dispute the restrictive covenants expired. The issue is whether the covenants authorizing the Association to obligate member dues and assessments continued after the expiration of the restrictive covenants.

[5] Although the property was included in the original overlay district filing, this was "due to transcriptional error." The filing was later corrected by addendum in 2009, and the parties do not dispute that Lake Cabin was never part of the overlay district.

part of their property on the Harbor" and "are interested in extricating themselves from the Association, and having a long-term plan to access rural water." In January 2021, counsel sent a second letter, stating that the "Doughertys formally object and do not agree" and "do not believe they are governed by either [the Association] or WOHLOA and do not agree to a part of either group." The second letter also cites concerns about the Association's governance, the expiration of the restrictive covenants, and the inapplicability of the overlay district to the Doughertys' property. Finally, it cites the statutory provisions that allow a member of an incorporated association to resign at any time and that require approval for a merger by its members. *See* Iowa Code §§ 501B.20 (2020) (permitting a member "to resign at any time" "in the absence of applicable governing principles"), 501B.30(3)(c) (requiring mergers to be approved by the members of both unincorporated associations and requiring mergers that impose personal liability to be "approved in a record by the member"). The same day, the Association replied and confirmed receipt of the letter. After this exchange, the Doughertys did not vote or attend meetings. Because the Association still provided water utilities, the Doughertys continued to pay their dues. When they transitioned to Osceola Rural Water, they ceased paying dues and assessments.

At a February 2021 meeting, the Association voted both to approve the incorporation and the merger, becoming WOHLOA. At the July meeting, WOHLOA adopted new bylaws which allowed it to collect delinquent assessments from homeowners and provided a right to "reasonable attorney fees to be fixed by the Court." The bylaws also included additional restrictions on the use of the properties, such as a prohibition on short-term rentals, defined the boardwalks and

water areas as "common elements," and provided limitations on "capital improvements" over $50,000. The bylaws did not address resignation from the association.

At a July meeting, WOHLOA discussed the funding necessary to complete the seawall and boardwalk project and proposed an additional $2,500,000 loan. The vote passed, and members were assessed five equal quarterly payments of $3450 in addition to the original $345 per quarter payment to complete the project. WOHLOA billed Lake Cabin for the assessments, and Lake Cabin refused to pay.

WOHLOA filed suit, (1) requesting a declaratory judgment confirming Lake Cabin was responsible for the unpaid dues and assessments and (2) alleging breach of contract and unjust enrichment. Lake Cabin answered and counterclaimed, seeking its own declaratory judgment confirming it is not a member of either the Association or WOHLOA and therefore not obligated to pay dues and assessments. After substantial discovery, Lake Cabin moved for summary judgment, contending that WOHLOA was not entitled to relief. The district court denied the motion, stating a genuine issue of material fact existed.

After a two-day nonjury trial, the court determined that Lake Cabin must pay dues and assessments to WOHLOA because they were not considered "use restrictions" applicable to expiration. It also concluded that Lake Cabin is barred from resigning from the organization based on implied practices and its acceptance of the property deed. In the alternative, the court found Lake Cabin failed to effectively resign. The court dismissed the claim for unjust enrichment and awarded WOHLOA attorney fees. Lake Cabin appeals.

## II. Review.

"Our review of an appeal from a declaratory judgment action is determined by how the case was tried in district court." *In re Coe Coll.*, 935 N.W.2d 581, 586 (Iowa 2019) (citation omitted). Because this case was tried in equity, our review is de novo. *See id.* We "give weight to the factual findings of the district court, especially with respect to determinations of witness credibility." *Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 642–43 (Iowa 2019) (citation omitted).

## III. Discussion.

Lake Cabin challenges the determination that it must pay operating dues and assessments to WOHLOA and its predecessor, the Association. It also challenges the award of WOHLOA's attorney fees.

### A. Declaratory Judgment.

We begin with the question of whether Lake Cabin is obligated to pay WOHLOA dues and assessments. Lake Cabin contends it does not have to pay WOHLOA dues and assessments because the relevant covenants on the property expired. It also contends there is no obligation because it is not a member of WOHLOA or its predecessor, the Association.

#### 1. Membership in the Association Based on Restrictive Covenants.

Lake Cabin first contends it does not have to pay dues and assessments because the covenants obligating Association dues and assessments expired, a

2014 legislative amendment does not apply retroactively,[6] and the amendment should not apply because it cannot use the harbor seawall.[7]

Iowa Code section 614.24 (2003) states that:

No action based upon any claim arising or existing by reason of the provisions of any deed or conveyance or contract or will reserving or providing for any reversion, reverted interests or *use restrictions* in and to the land therein described shall be maintained either at law or in equity in any court to recover real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, *against the holder of the record title to such real estate in possession after twenty-one years from the recording of such deed.*

(emphasis added). The Iowa legislature later amended the statute, expressly excluding from the definition of "use restrictions":

An agreement between two or more parcel owners providing for the sharing of costs and other obligations . . . for maintenance, repair, improvements, services, or other costs related to two or more parcels of real estate regardless of whether the parties to the agreement are owners of individual lots or incorporated or unincorporated lots or have ownership interests in common areas in a horizontal property regime or residential housing development[,]

and "[a]n agreement between two or more parcel owners for the joint use and maintenance of driveways, party walls, landscaping, fences, wells, roads, common areas, waterways, or bodies of water." Iowa Code § 614.24(5)(b), (c) (2015). Upon our review, we do not find that this was a substantive change but only a clarification of an already-imposed definition.

---

[6] Because we resolve this issue on other grounds, we need not consider whether the amendment should be applied "retroactively." *See Schueller v. Gillies*, No. 19-2114, 2021 WL 211166, at *7 (Iowa Ct. App. Jan. 21, 2021) (applying the definition of "use restrictions" to interpret economic obligations).

[7] We similarly do not reach the merits of Lake Cabin's claim regarding usage because we do not apply the amendment language.

In interpreting statutes, we do not take the place of the legislature. *See Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019) ("We begin with the understanding that '[i]t is not the function of courts to legislate.'" (alteration in original) (citation omitted)). Instead, we look to the plain meaning of the language and "give effect to the legislature's words." *Schueller*, 2021 WL 211166, at *7. When it drafted the amendment, the Iowa legislature focused on limiting negative easements and actual uses of the land, not to cast aside any and all claims or interests on the property; in fact, one of the draftsmen of the statute stated the intent "was to limit stale uses and reversions and not to bar interest in land granted or reserved. We are trying to distinguish a *negative* easement or a perpetual right of reentry." *Amana Soc'y v. Colony Inn, Inc.*, 315 N.W.2d 101, 109–10 (Iowa 1982) (quoting Arthur E. Ryman Jr., *The Iowa "Stale Uses and Reversions Statute": Parameters and Constitutional Limitations*, 19 Drake L. Rev. 56, 63 (1969) (emphasis in original)). At issue here are not restrictions on land usage but simply financial obligations, and we have already determined previously that "assessments are merely obligations to pay money. Apart from their economic impact, they impose no limits" on the actual use of the property. *Schueller*, 2021 WL 211166, at *7. And we have previously applied this definition to enforce the payment of such assessments. *Id.* at *8. We therefore apply the statute "as it is written," *Fishel*, 939 N.W.2d at 663 (citation omitted), and find Lake Cabin's financial obligations to WOHLOA are no exception.

We do note, however, that Iowa Code section 614.24(5) still requires "agreement." While financial obligations are not "use restrictions" as defined by section 614.24, *see Schueller*, 2021 WL 211166, at *7, the same cannot be said

for membership within a homeowner association or true restrictive covenants. We have held that homeowners cannot be compelled to be members of a homeowner association without mutual assent. *See Scholtus v. Parkside Knolls-South Homeowners Ass'n*, No. 22-0600, 2023 WL 3089879, at *2 (Iowa Ct. App. Apr. 26, 2023) (noting "[r]estrictive covenants are contracts" and that their enforcement requires mutual assent by the parties (alteration in original) (citation omitted)). This is true even if Lake Cabin was aware of the Association's existence before it acquired the property. *See id.* at *3 ("[T]he mere knowledge that restrictive covenants existed does not constitute manifestation of assessment to be bound by those covenants.").

"Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance." Restatement (Second) of Contracts § 18 (Am. L. Inst. 1981). "Such promises may be made . . . by a landowner's restricting instrument on lots in a tract followed by deeds to those lots." *Compiano v. Kuntz*, 226 N.W.2d 245, 248 (Iowa 1975). The original plat included such restrictions on the subdivided lots before deeding them to the various owners. It also established the Association, which created bylaws addressing such circumstances. Multiple iterations of the Association's bylaws provided for an automatic transfer of membership with the transfer of the property, and these were included as part of the abstract of title. Amendments to the bylaws made in 1983 state that "acceptance of [the] deed" means agreeing "to become subject to these provisions and such other rules and regulations of the Association as may be established." This is almost identical to the Iowa Supreme Court's interpretation, which found that "the promises which the owners mutually made by accepting their

deeds [encumbered by restrictive covenants] come within the definition of the word contract." *Id.* at 249. Based on the evidence, Lake Cabin assented to the Association's reach by accepting its deed. We therefore affirm the court's determination that the relevant restrictive covenants have not expired and find Lake Cabin is responsible for its membership and financial obligations to WOHLOA.

### 2. Membership in WOHLOA Based on Merger and Time of Alleged Resignation.

#### a. Consent to Merger.

Lake Cabin next claims it is not a member of WOHLOA because it never agreed to a merger and thus is not responsible for its dues and assessments.[8] *See* Iowa Code §§ 501B.16(1)(e) (2020) (requiring "approval of its members" to merge), 501B.30(3)(c) (requiring approval "in a record by a member" if "merger would impose personal liability" on the member), 504.601(2).[9] In response, WOHLOA correctly points out that unanimous approval is not required for a merger. *See* Iowa Code § 501B.16(1). When the Association merged into WOHLOA, it followed the bylaws' majority and quorum requirements. WOHLOA also adopted the prior Association's bylaws and created no additional liabilities or obligations. While Lake Cabin may not face compulsory membership, this does

---

[8] The merger issue was not resolved below. We therefore find this issue was not properly preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

[9] Iowa Code section 504.601(2) provides that: "A person shall not be admitted as a member without the person's consent or affirmative action evidencing consent."

not absolve it of any financial obligations to the prior Association and now WOHLOA. *See* Iowa Code § 501B.20; *see also Adams v. Long Branch Maint. Corp.*, No. 19-0335, 2020 WL 4814077, at *3 n.3 (Iowa Ct. App. Aug. 19, 2020).

   *b. Resignation.*

Lake Cabin further maintains that it was never a member of WOHLOA because it resigned from its predecessor organization, the Association, under Iowa Code section 501B.20. This provision allows a member of an unincorporated nonprofit to resign "in accordance with the governing principles," or in their absence, "at any time." In response, WOHLOA argues that the "governing principles" include implied practices, *see* Iowa Code § 501B.2(2) (defining "governing principles" as "the agreements, whether oral, in a record, or implied from its established practices"), and homeowner associations by nature bar resignation. In the alternative, WOHLOA argues that Lake Cabin's alleged resignation was ineffective.

We need not consider whether Lake Cabin had the authority to resign because any withdrawal was ineffective. Lake Cabin's entire argument hinges on a letter sent in January 2021 by its attorney to the prior Association. While Lake Cabin claims the letter was an effective resignation, we disagree.[10] Iowa Code section 501B.20 "explicitly applies only to a 'member.'" *Cf. Adams*, 2020 WL 4814077, at *3 (interpreting a similar resignation provision in Iowa Code section 504.621). Lake Cabin was not a property owner at the time of the alleged

---

[10] We also note that even if Lake Cabin had the authority to and effectively resigned, this does not relieve it of its financial obligations to WOHLOA "before resignation." *See* Iowa Code § 501B.20; *accord Adams*, 2020 WL 4814077, at *3n.3.

resignation. The property was not transferred from the trusts until February 16, 2021. Therefore, Lake Cabin cannot rely on this provision to resign; such resignation was not effective. *See id.* We therefore do not find that Lake Cabin effectively resigned.

*B. Attorney Fees.*

Lake Cabin then contends the award of attorney fees was improper because without a written contract or unanimous consent by all homeowners, it lacks a statutory or contractual basis. *See NCJC, Inc. v. WMG, L.C.*, 960 N.W.2d 58, 62 (Iowa 2021) ("Generally, attorney fees are recoverable only by statute or under a contract." (citation omitted)). But "[r]estrictive covenants *are* contracts." *Fjords N., Inc. v. Hahn*, 710 N.W.2d 731, 735 (Iowa 2006) (emphasis added). Lake Cabin cites no authority to support its assertion that WOHLOA had to show unanimous consent to obtain reasonable attorney fees. Both the Association's and WOHLOA's bylaws provide for the recovery of reasonable attorney fees in the event of unpaid assessments. We conclude those bylaws, which are supported by the restrictive covenants, provide the contractual basis. We subsequently affirm the award.

WOHLOA further requests an award of appellate attorney fees. We have the authority to award such fees and choose to do so now based on WOHLOA's attorney fee affidavit. *Cf. Van Sloun v. Agans Bros.*, 778 N.W.2d 174, 184 (Iowa 2010) (noting appellate courts have no authority to award appellate attorney fees due under contract without an attorney fee affidavit). We award WOHLOA $9280 in appellate attorney fees.

*IV.* **Disposition.**

Because Lake Cabin's financial obligations are not use restrictions and therefore have not expired by operation of law, Lake Cabin is responsible for its membership and financial obligations to WOHLOA.

**AFFIRMED.**